**Keith A. Ketterling**, OSB No. 913368
**Timothy S. DeJong**, OSB No. 940662
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 Southwest Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
Email:    kketterling@stollberne.com
          tdejong@stollberne.com

*Local Counsel for Plaintiff Yagnesh Mehta*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| YAGNESH MEHTA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NIKE, INC., JOHN J. DONAHOE II, and MATTHEW FRIEND,<br><br>Defendants. | Case No. 3:24-cv-1150<br><br>**CLASS ACTION ALLEGATION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br>(15 U.S.C. §§ 78j(b) and 78t(a) & 17 C.F.R. § 240.10b-5)<br><br><u>DEMAND FOR JURY TRIAL</u> |

PAGE 1 – **CLASS ACTION ALLEGATION COMPLAINT**

Plaintiff Yagnesh Mehta ("Plaintiff"), by and through Plaintiff's counsel, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by NIKE, Inc. ("NIKE" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION AND OVERVIEW

1.    This is a federal securities class action on behalf of a class of all persons and entities who purchased or otherwise acquired NIKE Class B common stock between March 19, 2021, and June 27, 2024, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5, promulgated thereunder.

2.    NIKE is an Oregon corporation with its principal executive offices in Beaverton, Oregon.  NIKE is a global athletic footwear and apparel company which designs, markets, and sells products for its NIKE, Jordan, and Converse brands.  NIKE branded products are sold through the Company's retail stores, NIKE Brand Digital platforms ("NIKE Digital"), wholesale partners, distributors, and licensees.   NIKE Digital includes Nike.com and the Company's digital application, Nike+.  The Company's Class B common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "NKE."

PAGE 2 – **CLASS ACTION ALLEGATION COMPLAINT**

3.     In 2017, NIKE began implementing its "Consumer Direct Offense" strategy, which focused on increasing innovation and direct connections with consumers.  Consumer Direct Offense also emphasized NIKE's digital presence as a means of directly connecting with consumers by "add[ing] greater digital expertise and control in the markets where consumer connections happen."  In fact, the Company began reporting the financial metrics from NIKE Digital and the Company's retail stores as "NIKE Direct."  In connection with NIKE's direct-to-consumer strategy, the Company dropped nearly one-third of its sales partners by late 2020, and significantly reduced sales to other major retail clients in order to shift the Company's focus to direct-to-consumer sales.

4.     The Class Period begins on March 19, 2021, to coincide with NIKE's announcement of its financial results for the third quarter of fiscal year 2021, and NIKE's related investor earnings call, after the market closed the prior evening.  In connection with these results, Defendant John J. Donahoe II (the Company's President and Chief Executive Officer) touted that "NIKE continues to deeply connect with consumers all over the world driven by our strong competitive advantages" and that "[o]ur strategy is working, as we accelerate innovation and create the seamless, premium marketplace of the future."  Defendant Matthew Friend (the Company's Executive Vice President and Chief Financial Officer) similarly assured investors that "NIKE's brand momentum is as strong as ever and we are driving focused growth against our largest opportunities."  On the related investor earnings call, Defendant Donahoe emphasized NIKE's "tremendous success in digital" and that "NIKE's digital transformation remains a unique advantage."

PAGE 3 – **CLASS ACTION ALLEGATION COMPLAINT**

5.      Throughout the Class Period, Defendants repeatedly touted the purported strength of NIKE's business model, and in particular, the claimed success of its digital and direct-to-consumer strategies to produce sustainable growth, while downplaying the significant competitive pressures facing the Company.

6.      Investors began to learn the truth about NIKE's inability to generate sustainable revenue growth on June 27, 2022, when the Company announced its fourth quarter and full year 2022 financial results after market close.  NIKE announced that quarterly revenues declined 1% year-over-year and quarterly wholesale revenues declined 7% year-over-year.   However, Defendant Donahoe reassured investors that NIKE's "strategy is working" by creating value through its "competitive advantages, including [its] pipeline of innovative product[s] and expanding digital leadership."  He further asserted that NIKE's investments in digital and other areas prompted Defendants to be "very confident in our long-term strategy and our growth outlook."  On this news, the price of NIKE Class B common stock declined $7.72 per share, or nearly 7%, from a close of $110.50 per share on June 27, 2022, to close at $102.78 per share on June 28, 2022.

7.      Three months later, on September 29, 2022, investors learned more when NIKE reported its first quarter fiscal year 2023 financial earnings after market close.  In spite of modest revenue growth, NIKE reported that its net income declined 22% year-over-year and that diluted earnings per share ("EPS") similarly declined 20% year-over-year.   NIKE also reported a significant reduction in gross margin (down 220 basis points year-over-year) driven by the disposal of excess inventory—which was 44% higher than in the first quarter of 2022.  On this news, the

PAGE 4 – **CLASS ACTION ALLEGATION COMPLAINT**

price of NIKE Class B common stock declined $12.21 per share, or nearly 13%, from a close of $95.33 per share on September 29, 2022, to close at $83.12 per share on September 30, 2022.

8.     Notwithstanding the Company's struggles with NIKE Direct and its direct-to-consumer strategy, Defendants continued to tout the purported strength of NIKE's business model over the next year, telling investors that NIKE's "competitive advantages continue to fuel our momentum" and that NIKE is primed to "leverage our competitive advantages to not only gain share but also grow the market."

9.     On December 21, 2023, however, investors learned more about the competitive pressures facing NIKE when the Company issued its second quarter fiscal year 2024 financial results and held its related investor earnings call after market close.  Defendant Friend admitted that NIKE's "total retail sales across the marketplace fell short of our expectations," and that NIKE's digital platforms lost consumer traffic to competitors because of "higher promotional activity across the marketplace."  Given these challenges, Defendant Friend revealed that NIKE was "adjusting [its] channel growth plans for the remainder of the year" and "identifying opportunities across the company to deliver up to $2 billion in cumulative cost savings over the next 3 years."  On this news, the price of NIKE Class B common stock declined $14.49 per share, or nearly 12%, from a close of $122.53 per share on December 21, 2023, to close at $108.04 per share on December 22, 2023.

10.     On March 21, 2024, NIKE announced its third quarter fiscal year 2024 financial results after market close, revealing a 3% year-over-year decline in revenue in its Europe, Middle East, and Africa ("EMEA") segment, a 3% year-over-year decline in NIKE Digital revenue, and scant quarterly revenue growth of approximately 0.4% year-over-year in NIKE Direct.  On the

PAGE 5 – **CLASS ACTION ALLEGATION COMPLAINT**

related investor earnings call held that same day, Defendant Donahoe admitted that "NIKE is not performing [to its] potential" even though moments earlier he claimed that "Q3 performed in line with our expectations."  Moreover, Defendant Donahoe revealed the Company's decision to reduce reliance on its direct-to-consumer strategy and "lean in with our wholesale partners to elevate our brand and grow the total marketplace."  According to Defendant Donahoe, NIKE made a "reinvestment with our wholesale partners, so we bring a more holistic offense that grows the market and gets in the path of our consumer."  Furthermore, Defendant Friend revealed that NIKE was "prudently planning for revenue in the first half of the fiscal year [2025] to be down low single digits" as Defendants "shift our product portfolio toward newness and innovation."  On this news, the price of NIKE Class B common stock declined $6.96 per share, or nearly 7%, from a close of $100.82 per share on March 21, 2024, to close at $93.86 per share on March 22, 2024.

11.     On June 27, 2024, NIKE announced its fourth quarter and full year 2024 financial results.  The Company revealed a 2% year-over-year quarterly revenue decrease, including, *inter alia*, an 8% year-over-year quarterly revenue decline in NIKE Direct and a 10% year-over-year quarterly revenue decline in NIKE Digital.  Defendant Donahoe later explained to investors that Defendants are taking "strategic shifts . . . including leadership and organization changes" to "position [NIKE] to compete and win."  Nevertheless, Defendant Friend disclosed that NIKE was expected to face significant headwinds through fiscal year 2025 which would cause NIKE's full year 2025 revenue "to be down mid-single digits with the first half down high single digits."  Critically, Defendants further retreated from NIKE's direct-to-consumer strategy by "reducing what we're offering to consumers through our digital channel."  Given NIKE's substandard financial performance and Defendants' disparaging commentary about the Company's financial

PAGE 6 – **CLASS ACTION ALLEGATION COMPLAINT**

outlook, market analysts at Barclays questioned the "long-term health of the Nike brand" as "[NIKE]'s strategy continues to increase in uncertainty." Moreover, Neil Saunders, the managing director at GlobalData, also expressed an unsettled view of the Company, noting that NIKE's "[m]anagement has tried to sell a story of improvement to investors, but is not prepared to back it up with positive forecasts." On this news, the price of NIKE Class B common stock declined $18.82 per share, or approximately 20%, from a close of $94.19 per share on June 27, 2024, to close at $75.37 per share on June 28, 2024. This stock drop represented the largest decline in the price of NIKE Class B common stock since 2001.

12.     This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that: (1) NIKE's direct-to-consumer strategy was unable to generate sustainable revenue growth; (2) NIKE's purported competitive advantages were unable to protect the Company from intense competitive pressures after NIKE largely disengaged from many of its wholesale and retail partners to focus on the Company's direct-to-consumer strategy; and (3) as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

13.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's Class B common stock pursuant to the revelation of the fraud, Plaintiff and other members of the Class (defined below) have suffered significant damages.

PAGE 7 – **CLASS ACTION ALLEGATION COMPLAINT**

## II.    <u>JURISDICTION AND VENUE</u>

14.    Plaintiff's claims arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

15.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

16.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because NIKE is incorporated and headquartered in this District, and because many of the acts and conduct that constitute the violations of law complained of herein, including the dissemination to the public of materially false and misleading information, occurred in this District.

17.    In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    <u>PARTIES</u>

18.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased NIKE Class B common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

19.    Defendant NIKE is an Oregon corporation headquartered at One Bowerman Drive, Beaverton, Oregon 97005-6453.

PAGE 8 – **CLASS ACTION ALLEGATION COMPLAINT**

20.     Defendant Donahoe was, at all relevant times, NIKE's President and Chief Executive Officer, and a Company Director.

21.     Defendant Friend was, at all relevant times, NIKE's Executive Vice President and Chief Financial Officer.

22.     Defendants Donahoe and Friend are collectively referred to as the "Individual Defendants."

23.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of NIKE's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market.  Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

24.     NIKE and the Individual Defendants are collectively referred to herein as "Defendants."

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Background

25.     NIKE is an Oregon corporation with its principal executive offices in Beaverton, Oregon.  It is a global athletic footwear and apparel company which designs, markets, and sells

PAGE 9 – **CLASS ACTION ALLEGATION COMPLAINT**

products for its NIKE, Jordan, and Converse brands.  The Company's NIKE branded products are sold through its retail stores, NIKE Digital, wholesale partners, distributors, and licensees.  NIKE Digital includes Nike.com and the Company's digital application, Nike+.

26.    Historically, NIKE emphasized three "competitive advantages" as the basis for its success—"a culture deeply rooted in innovation, a brand that deeply connects with consumers fueled by compelling storytelling and an unmatched sports marketing portfolio."

27.    In 2017, NIKE began implementing its "Consumer Direct Offense" strategy, which focused on increasing innovation and direct connections with consumers.  Consumer Direct Offense also emphasized NIKE's digital presence as a means of directly connecting with consumers by "add[ing] greater digital expertise and control in the markets where consumer connections happen."  In fact, the Company began reporting the financial metrics from NIKE Digital and the Company's retail stores as one segment—"NIKE Direct."  NIKE Direct is divided into four geographic operating segments: North America; EMEA; Greater China; and Asia Pacific & Latin America.

28.    On June 25, 2020, Defendants announced a second phase to Consumer Direct Offense—"Consumer Direct Acceleration"—the Company's "new digitally empowered phase of our consumer direct strategy" intended to provide consumers with a "consistent, seamless physical and digital experience."

29.    According to the Company, the acceleration of NIKE's direct-to-consumer strategy more closely aligned NIKE's designs and products with consumer preferences, and optimized the Company in several areas, including, *inter alia*, "data and analytics, demand sensing, insight gathering," and inventory management, to accelerate NIKE's "digital transformation."

PAGE 10 – **CLASS ACTION ALLEGATION COMPLAINT**

30.    In connection with the acceleration of NIKE's direct-to-consumer strategy, NIKE dropped nearly one-third of its sales partners by late 2020, and significantly reduced sales to retail clients, such as Foot Locker, DSW, and Macy's, in order to shift the Company toward direct-to-consumer sales and away from reliance on wholesale partners.  NIKE Direct is intended to be the centerpiece of NIKE's long-term financial plans and has been touted by Defendant Donahoe as NIKE's "fourth emerging competitive advantage."

31.    NIKE's Class B common stock trades on the NYSE under the ticker symbol "NKE."

**B.    Defendants' False and Misleading Statements During the Initial Portion of the Class Period**

32.    The Class Period begins on March 19, 2021, the day after NIKE announced its third quarter fiscal year 2021 financial results after market hours.  Among other things, the Company highlighted a 3% year-over-year increase in quarterly revenues "led by Greater China reported revenue growth of 51 percent" and "NIKE Brand digital sales increased 59 percent . . . with strong double-digit increases in all geographies."  Notably, Defendant Donahoe touted the Company's "strong competitive advantages" as the driving force behind NIKE's continued success.  Defendant Friend similarly assured investors that "NIKE's brand momentum is as strong as ever, and we are driving focused growth against our largest opportunities."

33.    During the accompanying investor earnings call held after market hours on March 18, 2021, Defendant Donahoe stressed NIKE's "tremendous success in digital"—including the Company's "digital transformation"—as its "unique advantage" to power its global brand.

PAGE 11 – **CLASS ACTION ALLEGATION COMPLAINT**

34.    On June 24, 2021, when NIKE announced its fourth quarter and full fiscal year 2021 financial results after market close, Defendant Donahoe emphasized that "NIKE's strong results this quarter and full fiscal year demonstrate NIKE's unique competitive advantage and deep connection with consumers all over the world."  Defendants specifically focused on the importance of the Company's digital presence, with Defendant Friend noting that "NIKE's brand momentum is a testament to our authentic consumer connections, digital strength and continued operational execution," and that, "[a]s we advance our consumer-led digital transformation, we are building a new financial model that will continue to fuel long-term sustainable, profitable growth for NIKE."

35.    During the accompanying investor earnings call held that same day, Defendant Donahoe reiterated that NIKE's "strong business results proved yet again NIKE's unique competitive advantage."  Furthermore, he touted that "we are better positioned to drive sustainable long-term growth than we were before the pandemic" and "[o]ur relentless pipeline of innovative products continues to create separation between us and our competition."

36.    On the same call, Defendant Friend discussed NIKE's Consumer Direct Acceleration strategy, explaining that the Company will make an "accelerated shift to a more direct member-centric business model" where the Company's revenue "[g]rowth will be led by NIKE Direct and our strategic marketplace partners."  Specifically, he noted that Defendants intend for NIKE Direct "to represent approximately 60% of the business in fiscal '25, led by growth in digital."

37.    On December 20, 2021 NIKE announced its second quarter fiscal year 2022 financial results after market close.  On the accompanying investor earnings call held that same day, Defendant Donahoe emphasized that "[t]he results we delivered offered continued proof that

PAGE 12 – **CLASS ACTION ALLEGATION COMPLAINT**

our strategy is working."  Moreover, Defendant Donahoe highlighted NIKE's digital presence as its "fourth emerging competitive advantage . . . as we are one of the few brands that can directly connect with and serve consumers at scale."

38.    During the same call, Defendant Donahoe further touted NIKE's competitive position during an exchange with a JPMorgan Chase & Co. analyst.  Specifically, Defendant Donahoe stated that the Company's "digital penetration is at an all-time high," leading to a "direct connection with the consumer" that is ultimately "strengthening and strengthening [NIKE's brand] against our historical competitors."

39.    On March 21, 2022, NIKE reported its third quarter fiscal year 2022 financial results after market close.  During the accompanying investor earnings call held that same day, Defendant Donahoe stressed NIKE's "growing digital advantage," particularly as Defendants "continue to drive greater competitive separation" through the Company's digital presence. Moreover, while NIKE's third quarter fiscal year 2022 revenues in Greater China were down 8% year-over-year, Defendant Friend sought to reassure investors that "NIKE was rated the #1 cool and #1 favorite brand in China, creating separation and distinction versus the competition."

40.    The above statements identified in ¶¶ 32-39 were materially false and misleading, and failed to disclose materially adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that: (1) NIKE's direct-to-consumer strategy was unable to generate sustainable revenue growth; (2) NIKE's competitive advantages were unable to protect the Company from intense competitive pressures after NIKE largely disengaged from many of its wholesale and retail partners to focus on the Company's direct-to-consumer strategy; and (3) as a result, Defendants' representations about the Company's

PAGE 13 – **CLASS ACTION ALLEGATION COMPLAINT**

business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

### C.    The Truth Begins to Be Revealed

41.    Investors began to learn the truth about the unsustainability of NIKE's direct-to-consumer strategy on June 27, 2022, when NIKE announced its fourth quarter and full fiscal year 2022 financial results after market close.  NIKE's quarterly revenues declined 1% year-over-year and quarterly wholesale revenues declined 7% year-over-year.  Likewise, NIKE's quarterly gross margin declined 80 basis points year-over-year, "primarily due to higher inventory obsolescence reserves in Greater China and elevated freight and logistics costs," and the Company's 2022 gross margin growth of 120 basis points year-over-year was significantly below expectations.

42.    Defendant Donahoe asserted that, in spite of the Company's poor performance, NIKE's "competitive advantages, including our pipeline of innovative product and expanding digital leadership, prove that our strategy is working as we create value through our relentless drive to serve the future of sport."

43.    Additionally, on the accompanying investor earnings call also held on June 27, 2022, Defendant Donahoe stated that, "as we look ahead to fiscal '23, we remain very confident in our long-term strategy and our growth outlook."  Moreover, in response to an analyst's question about Defendants' outlook in China—including an expected 100+ basis point decline in first quarter fiscal year 2023 gross margin—Defendant Donahoe downplayed any concerns, noting that "[w]e've always taken a long-term view" in China and that NIKE is China's "#1 cool brand."

44.    On this news, the price of NIKE Class B common stock declined $7.72 per share, or nearly 7%, from a close of $110.50 per share on June 27, 2022, to close at $102.78 per share on June 28, 2022.

PAGE 14 – **CLASS ACTION ALLEGATION COMPLAINT**

45.     Investors learned more about the Company's struggles on September 29, 2022, when NIKE reported disappointing first quarter fiscal year 2023 financial results after market close.  NIKE reported significant year-over-year declines in net income (22%), diluted EPS (20%), and gross margin (220 basis points), with only a meager increase in NIKE's quarterly revenue (4%).  The Company also disclosed that its gross margin was primarily impacted by the disposal of excess inventory—which was 44% higher than the same period in 2022.  In explaining the Company's margin issues, Defendant Friend acknowledged that "we've decided to take that inventory and more aggressively liquidate it."

46.     Nonetheless, on the accompanying investor earnings call held that same day, Defendant Donahoe reassured investors that the industry was experiencing a "period of turbulence" where Defendants "want to leverage our strengths to emerge in a stronger position than our competition at the other end of it."  Specifically, he underscored that "[w]e've got a really strong innovation pipeline.  So we talk about the transitional and the structural.  The transitional is navigating through the inventory situation.  The structural is leveraging our competitive advantages so we emerge in a stronger position, and we'll be playing offense on both."

47.     On this news, the price of NIKE Class B common stock declined $12.21 per share, or nearly 13%, from a close of $95.33 per share on September 29, 2022, to close at $83.12 per share on September 30, 2022.

**D.     Defendants Continue to Falsely Tout the Sustainability of NIKE's Business Model**

48.     On December 20, 2022, NIKE announced its second quarter fiscal year 2023 financial results after market close.  In connection with these results, Defendants persisted in

PAGE 15 – **CLASS ACTION ALLEGATION COMPLAINT**

touting NIKE's growth strategy, with Defendant Donahoe claiming that "NIKE's results this quarter are a testament to our deep connection with consumers," "[o]ur growth was broad-based and was driven by our expanding digital leadership and brand strength," and that "[t]hese results give us confidence in delivering the year as our competitive advantages continue to fuel our momentum."    Additionally, Defendant Friend stated that "[c]onsumer demand for NIKE's portfolio of brands continues to drive strong business momentum in a dynamic environment" and that Defendants are "on track to deliver on our operational and financial goals — setting the foundation for sustainable, profitable growth."

49.    On the accompanying investor earnings call held that same day, Defendant Donahoe highlighted that NIKE is "creating more separation between us and our competition thanks to the meaningful relationships we have with consumers and the continued success of our strategy."

50.    Six months later, on June 29, 2023, the Company reported its fourth quarter and full fiscal year 2023 financial results after market close.  On the accompanying investor earnings call held that same day, Defendant Friend announced NIKE's fiscal year 2024 financial outlook of revenue growth in the mid-single digits and gross margin growth between 140 and 160 basis points due, in part, to "clear advantages, strong consumer momentum, a robust product innovation pipeline, healthy inventory and a normalized flow of supply."

51.    During the same investor earnings call, a JPMorgan Chase & Co. analyst asked Defendant Donahoe to explain "how you believe the NIKE brand is positioned to capture market share globally?"  In response, Defendant Donahoe stated that NIKE is primed to "leverage our

PAGE 16 – **CLASS ACTION ALLEGATION COMPLAINT**

competitive advantages"—such as its digital presence—"to not only gain share but also grow the market."

52.      The above statements identified in ¶¶ 48-51 were materially false and misleading, and failed to disclose materially adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that: (1) NIKE's direct-to-consumer strategy was unable to generate sustainable revenue growth; (2) NIKE's competitive advantages were unable to protect the Company from intense competitive pressures after NIKE largely disengaged from many of its wholesale and retail partners to focus on the Company's direct-to-consumer strategy; and (3) as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

### E.      The Truth is Revealed

53.      Investors began to learn more about NIKE's inability to generate sustainable revenue growth through its Consumer Direct Offense strategy on December 21, 2023, when the Company announced its second quarter fiscal year 2024 financial results after market close. Specifically, the Company announced 1% total revenue growth year-over-year, which was dragged down by quarterly revenue declines in North America and EMEA.  Additionally, during the accompanying investor earnings call held that same day, Defendant Friend revealed that NIKE's "[t]otal retail sales across the marketplace fell short of our expectations" and that NIKE's digital platforms lost consumer traffic to competitors because of "higher levels of promotional activity across the marketplace."  Given these challenges, Defendant Friend revealed that NIKE was "adjusting [its] channel growth plans for the remainder of the year" and "identifying opportunities across the company to deliver up to $2 billion in cumulative cost savings over the next 3 years,"

PAGE 17 – **CLASS ACTION ALLEGATION COMPLAINT**

including improving the Company's supply chain efficiency and "streamlining [its] organizational structure."

54.    On this news, the price of NIKE Class B common stock declined $14.49 per share, or nearly 12%, from a close of $122.53 per share on December 21, 2023, to close at $108.04 per share on December 22, 2023.

55.    On March 21, 2024, NIKE announced its third quarter fiscal year 2024 financial results after market close, revealing a 3% year-over-year decline in EMEA revenue, a 3% year-over-year decline in NIKE Digital revenue, and scant quarterly revenue growth of just approximately 0.4% year-over-year in NIKE Direct.  Defendant Donahoe, on the accompanying investors earnings call held that same day, admitted that "NIKE is not performing in our potential." He then revealed that, "while NIKE Direct will continue to play a critical role, we must lean in with our wholesale partners to elevate our brand and grow the total marketplace."  Furthermore, Defendant Donahoe stated that "we're combining both the best of our direct offense but a reinvestment with our wholesale partners, so we bring a more holistic offense that grows the market and gets in the path of our consumer."  Defendant Friend then informed investors that "we are prudently planning for revenue in the first half of the fiscal year [2025] to be down low single digits."

56.    On this news, the price of NIKE Class B common stock declined $6.96 per share, or nearly 7%, from a close of $100.82 per share on March 21, 2024, to close at $93.86 per share on March 22, 2024.

57.    Then, on June 27, 2024, NIKE announced disappointing fourth quarter and full year 2024 financial results.  The Company disclosed a 2% year-over-year decrease in fourth quarter

PAGE 18 – **CLASS ACTION ALLEGATION COMPLAINT**

revenues, with significant year-over-year quarterly declines in NIKE Direct (8%) and NIKE Digital (10%). Moreover, NIKE's full year 2024 revenues only increased approximately 0.3% year-over-year, with a meager year-over-year increase in NIKE Direct revenue of approximately 1% for full year 2024. Critically, NIKE Digital full year 2024 revenue declined 3% year-over-year.

58.     On the related investor earnings call held that same day, Defendant Donahoe stated that "fiscal '25 will be a transition year for our business," but "highlighted the strategic shifts we're taking as a company, including leadership and organization changes" and "making a series of adjustments to position us to compete and win." More surprisingly, Defendant Friend revealed a "more pronounced impact" from headwinds expected to affect the Company through fiscal year 2025. In light of these headwinds, Defendant Friend revealed that NIKE expects full year 2025 NIKE revenue "to be down mid-single digits with the first half down high single digits"— significantly worse than previously disclosed. When asked about the change in the Company's financial outlook from the prior quarter, Defendant Friend explained that there was a "more pronounced" decline in NIKE's lifestyle products on NIKE Digital platforms than expected. In fact, Defendant Friend further revealed that, in order to "manage the health of [NIKE's largest franchises]," Defendants are planning to "reduc[e] what we're offering to consumers through our digital channel."

59.     Market analysts were disappointed by NIKE's fourth quarter and full year 2024 financial results. For example, analysts at Barclays believe that "[NIKE]'s strategy continues to increase in uncertainty" as to NIKE's "large-scale efforts to reset the business," including the Company's "redirection back into the wholesale channel." Importantly, the Barclays analysts note

PAGE 19 – **CLASS ACTION ALLEGATION COMPLAINT**

that "[w]e believe the most recent quarterly results have raised more questions and more uncertainty about the long-term health of the Nike brand."  Additionally, an analyst at Stifel stated that "[m]anagement['s] credibility is severely challenged, and [the] potential for C-level regime change adds further uncertainty."  Echoing this dim view of management, Neil Saunders, the managing director at GlobalData, was quoted saying that NIKE's "[m]anagement has tried to sell a story of improvement to investors, but is not prepared to back it up with positive forecasts."

60.    On the news of NIKE's continued struggles with its direct-to-consumer strategy and increasingly negative financial outlook for 2025, the price of NIKE Class B common stock declined $18.82 per share, or approximately 20%, from a close of $94.19 per share on June 27, 2024, to close at $75.37 per share on June 28, 2024.  The decline was NIKE's largest since 2001.

## V.    **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

61.    Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired NIKE Class B common stock during the Class Period (the "Class").  Excluded from the Class are Defendants, their agents, directors and officers of NIKE, and their families and affiliates.

62.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

63.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class, which predominate over questions which may affect individual Class members, include:

   a. Whether Defendants violated the Exchange Act;

   b. Whether Defendants omitted and/or misrepresented material facts;

PAGE 20 – **CLASS ACTION ALLEGATION COMPLAINT**

c.    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d.    Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.    Whether the price of NIKE Class B common stock was artificially inflated; and

f.    The extent of damage sustained by members of the Class and the appropriate measure of damages.

64.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

65.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in securities class actions.  Plaintiff has no interests that conflict with those of the Class.

66.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## VI.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

67.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among others:

a.    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

PAGE 21 – **CLASS ACTION ALLEGATION COMPLAINT**

b.      The omissions and misrepresentations were material;

c.      The Company's Class B common stock traded on an efficient market;

d.      The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's Class B common stock; and

e.      Plaintiff and the Class purchased NIKE Class B common stock between the time the Company and the Individual Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

68.      At all relevant times, the market for the Company's Class B common stock was efficient because: (1) as a regulated issuer, the Company filed periodic public reports with the SEC; and (2) the Company regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII.   **NO SAFE HARBOR**

69.      Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are liable for any false or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of NIKE who knew that the forward-looking statement was false.  None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan,

PAGE 22 – **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII.   LOSS CAUSATION/ECONOMIC LOSS

70.    Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class.  The price of NIKE Class B common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.  As a result of their purchases of NIKE Class B common stock during the Class Period, Plaintiff and the Class suffered economic loss, i.e., damages, under the federal securities laws.

## IX.   ADDITIONAL SCIENTER ALLEGATIONS

71.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of NIKE Class B common stock during the Class Period.

PAGE 23 – **CLASS ACTION ALLEGATION COMPLAINT**

X.      **CLAIMS AGAINST DEFENDANTS**

**COUNT I**

**Violations of Section 10(b) of the Exchange Act and**

**SEC Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

72.      Plaintiff incorporates by reference the allegations in the preceding paragraphs.

73.      During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase NIKE Class B common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

74.      Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of NIKE's Class B common stock in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

75.      As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their respective purchases of NIKE's Class B common stock during the Class Period.

PAGE 24 – **CLASS ACTION ALLEGATION COMPLAINT**

## COUNT II

### Violations of Section 20(a) of the Exchange Act

### Against the Individual Defendants

76.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

77.     The Individual Defendants acted as controlling persons of NIKE within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the activities giving rise to the securities violations as alleged herein, and exercised the same.

79.     As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are

PAGE 25 – **CLASS ACTION ALLEGATION COMPLAINT**

liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Company Class B common stock during the Class Period.

**XI.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b.    Awarding compensatory damages and equitable relief in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.    Such other and further relief as the Court may deem just and proper.

**XII.    DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated this 15th day of July 2024.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.


By: *s/ Timothy S. DeJong*
        **Keith A. Ketterling**, OSB No. 913368
        **Timothy S. DeJong**, OSB No. 940662
        209 Southwest Oak Street, Suite 500
        Portland, OR 97204
        Telephone: (503) 227-1600
        Facsimile:  (503) 227-6840
        Email:       kketterling@stollberne.com

PAGE 26 – **CLASS ACTION ALLEGATION COMPLAINT**

tdejong@stollberne.com

*Local Counsel for Plaintiff Yagnesh Mehta*

Naumon A. Amjed (*pro hac vice* forthcoming)
Geoffrey C. Jarvis (*pro hac vice* forthcoming)
Joshua S. Keszczyk (*pro hac vice* forthcoming)
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile:  (610) 667-7056
Email:       namjed@ktmc.com
                 gjarvis@ktmc.com
                 jkezczyk@ktmc.com

*Counsel for Plaintiff Yagnesh Mehta*

PAGE 27 – **CLASS ACTION ALLEGATION COMPLAINT**